Dear President Hicks:
This office is in receipt of your request for an opinion of the Attorney General in regard to whether Grambling State University (University) may retain a student's $50 housing deposit if that student has an outstanding balance with the University.
The University Handbook discusses the deposit in question under the "Dormitory Damage Deposit" provision. It states:
 "Upon graduating or permanently withdrawing from the University, the student may receive a refund upon written request provided that the written request is made within thirty (30) days following the effective termination date. The University reserves the right to use these deposits in any manner to provide for and maintain housing facilities, until such time as the deposit is requested.
 Until refund on the deposit, charges for losses, and damage to University property and other charges as determined by the University will be deducted from the deposit, the balance will be refunded to the student." (Emphasis added.)
This provision is clearly applicable to the situation at issue. One could interpret it to allow the University to offset the balance owed by a student with that student's housing deposit. Nothing within its handbook, itself, appears to contradict this construction.
However, under the "Student's Residence Request Form" contract, one of the terms under which rooms in the residence hall are assigned implies a different result. The applicable contractual provision states:
 "7. The Damage Fee serves as a deposit once the room is occupied [and] is valid for the duration of a student's stay in residence halls. If a student fails to check out properly, the deposit is forfeited. Any assessed damages or losses will be deducted from the deposit and any balance will be remitted to the student." (Emphasis added.)
As can be gleaned from the above excerpts, the Handbook contains language referring to "other charges" while the residence hall contract is limited to "damages" and "losses". To the extent the two documents conflict, it is our opinion that the residence hall contract prevails. We turn now to the principles governing the interpretation of the contract.
Various Louisiana Civil Code articles provide a framework for interpreting the residence contract at issue. They are as follows:
Art. 2045. Determination of the intent of the parties
 Interpretation of a contract is the determination of the common intent of the parties.
Art. 2047. Meaning of words
 The words of a contract must be given their generally prevailing meaning.
 Words of art and technical terms must be given their technical meaning when the contract involves a technical matter.
Art. 2050. Provisions interpreted in light of each other
 Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.
 Art. 2053. Nature of contract, equity, usages, conduct of the parties, and other contracts between the same parties
 A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of the contracts of a like nature between the same parties.
Art. 2056. Standard-form contracts
 In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
 A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
Guided by these codal provisions, the Damage Fee appears to apply only to those "damages or losses" sustained by the dormitory in which the student resides or has resided. The contractual language mentions nothing in relation to outstanding balances, tuition deficiencies, or delinquent accounts. The provision cited refers only to residence hall rooms in relation to the deposits.
Moreover, all other provisions of the contract are concerned solely with the issue of rooms in residence halls. This emphasizes the contractual intent, as a whole, to refer only to rooms as the object of these terms.
Additionally, the plain meaning of the contract's wording reenforces an equitable conclusion against the University. One could reasonably conclude that a student would read and understand the contract to be applicable only to University residential housing.
Finally, and assuming, arguendo, the deposit refund provisions of the standard form contract prepared by the University are doubtful, such doubt must be resolved in favor of the student. La.C.C. art. 2056.
In summary, it is the opinion of this office that the University may not retain a student's damage deposit required under a residence hall contract for any purpose other than reimbursement for damages and losses related to the dormitory rooms.
We hope this sufficiently answers your question. If we can be of further assistance, do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
BY: ROBERT E. HARROUN, III Assistant Attorney General RPI/Rob3/bb 0131l